17-1717-cr
*United States v. Altareb*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of December, two thousand eighteen.

PRESENT:  ROBERT D. SACK,
          BARRINGTON D. PARKER,
          DENNY CHIN,
                    *Circuit Judges*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,
                    *Appellee*,

              v.                                        17-1717-cr

ABDULKARIM ALTAREB,
                    *Defendant-Appellant*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FOR APPELLEE:                          Amy Busa, Assistant United States
                                       Attorney (Matthew J. Jacobs, Lindsay
                                       K. Gerdes, Assistant United States
                                       Attorneys, *on the brief*), *for* Richard P.
                                       Donoghue, United States Attorney
                                       for the Eastern District of New York,
                                       Brooklyn, New York.

FOR DEFENDANT-APPELLANT:	John C. Meringolo, Meringolo & Associates, P.C., Brooklyn, New York.

Appeal from the United States District Court for the Eastern District of New York (Mauskopf, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-appellant Abdulkarim Altareb was convicted after a five-day jury trial of operating an unlicensed money transmitting business, bulk cash smuggling, failing to file a report on the transporting of monetary instruments, making a false statement, and using a false writing or document. On May 10, 2017, the district court sentenced Altareb to 51 months' imprisonment and ordered him to forfeit $776,814. Altareb filed a timely notice of appeal on May 30, 2017. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

On March 1, 2015, Altareb arrived at John F. Kennedy Airport ("JFK Airport") in Queens, New York to travel to Yemen. During a currency enforcement examination, Altareb told officers he was transporting only $6,500. Officers arrested him, however, after finding $6,012 of declared currency on his person and $770,802 of undeclared currency in his checked luggage. Altareb was initially charged on March 2, 2015, and on March 2, 2016, the Government filed a superseding five-count indictment.

During jury selection before a magistrate judge (Pohorelsky, *M.J.*), Altareb challenged the Government's peremptory strike of Juror 19, contending that Juror 19 was the only individual of Arab heritage in the jury pool. The Government proffered three reasons for its strike: (1) Juror 19's husband was a taxi driver and Altareb used to be a taxi driver, (2) Juror 19 was unemployed and her employment history was unclear, and (3) Juror 19 received her news from Al Jazeera and the British Broadcasting Corporation. The magistrate judge rejected Altareb's challenge because he found these reasons were legitimate, non-discriminatory reasons and not a pretext for discrimination based on ethnic background. On appeal, the district judge also found "no evidence" of pretext and held that the peremptory challenge did not violate *Batson v. Kentucky*, 476 U.S. 79 (1986). J. App. at 206.

At trial, Hassan Saleh testified that Altareb operated a Hawala, an unlicensed money transmitting business that does not use banks. Saleh also testified that Altareb transferred money to Yemen for him on four occasions, from 2011 through 2015, and that he paid Altareb a fee on three of the four occasions. In addition, Adel Kassim, a cooperating witness, testified that he twice used Altareb to transfer money to Yemen in 2013, both times paying him a fee. Moreover, at the Government's direction, Kassim contacted Altareb multiple times in December 2014 and January 2015 about the possibility of a third transfer.

After Altareb was convicted on all counts, the Government sought forfeiture of $776,814 -- the full amount seized from Altareb. During the forfeiture hearing, the district court recognized that there were legal issues presented by the forfeiture, including whether, in light of *United States v. Bajakajian*, 524 U.S. 321 (1998), the forfeiture would constitute an excessive fine, but it held that these issues were better left for sentencing. At sentencing, however, the district court did not address the forfeiture's excessiveness and Altareb did not object. The district court ordered Altareb to forfeit $776,814. This appeal followed.

## DISCUSSION

Four issues are presented: (1) the *Batson* challenge to Juror 19; (2) the sufficiency of the evidence as to Count One, which charged the operation of an unlicensed money transmitting business in violation of 18 U.S.C. § 1960; (3) venue as to Count One; and (4) the amount of the forfeiture order.

### 1.     *Batson* Challenge to Juror 19

Altareb argues that his conviction must be vacated and the case remanded for a new trial because neither the magistrate judge nor the district judge expressly found the Government's race-neutral reasons to be credible. Alternatively, he argues that the district court erred in rejecting his *Batson* challenge on the merits. We review a trial court's conclusion that a defendant failed to carry his burden of proving discriminatory intent in a *Batson* challenge for clear error, giving "great deference" to the

- 4 -

trial court's ruling. *United States v. Lee*, 549 F.3d 84, 94 (2d Cir. 2008) (internal quotation marks omitted).

In *Batson v. Kentucky*, 476 U.S. 79 (1986), the Supreme Court established a three-step burden-shifting framework to determine whether a peremptory challenge is race-based. *Carmichael v. Chappius*, 848 F.3d 536, 545 (2d Cir. 2017). After a defendant has put forth a prima facie case of a race-based strike and the Government has provided a neutral explanation, the court must determine whether the defendant has established purposeful discrimination. *Id.* While there must be an "explicit adjudication of the credibility of the non-movant's race-neutral explanations," *Barnes v. Anderson*, 202 F.3d 150, 156 (2d Cir. 1999), "no clearly established federal law require[s]" the district court "to provide express reasons for each credibility determination," *McKinney v. Artuz*, 326 F.3d 87, 100 (2d Cir. 2003). So long as the parties are given a "reasonable opportunity to make their respective records," a judge "may express his *Batson* ruling . . . in the form of a clear rejection or acceptance of a *Batson* challenge." *Messiah v. Duncan*, 435 F.3d 186, 198 (2d Cir. 2006).

We are troubled here by the Government's use of a peremptory challenge to strike Juror 19, who was apparently the only member of the jury pool of Arab heritage. One of the reasons given by the Government for striking Juror 19 was that "she receives her news from Al Jazeera and the British Broadcasting Corporation." J. App. at 176. While some news channels certainly do reflect a "political bent" that can

fairly provide a basis for exercising a peremptory challenge, J. App. at 176; *see, e.g., Lee*, 549 F.3d at 94 (finding juror's news source a sufficient basis), disqualifying a juror for watching a news channel that targets viewers of Arab descent and viewers with an interest in the Middle East is hardly race-neutral.  Indeed, it comes dangerously close to purposeful discrimination.  Nevertheless, we are not persuaded that there was reversible error here.

First, we reject Altareb's contention that there was procedural error.  Both the magistrate judge and the district judge allowed the parties to make a record.  The magistrate judge stated he was "satisfied" with the Government's proffered reasons, concluding that they were "not a pretext for discrimination."  J. App. at 177-78.  Similarly, the district judge found the Government's reasons to be "neutral," found "no evidence . . . that the reasons . . . are pretext," and concluded that "this peremptory challenge does not violate the tenets of *Batson*."  J. App. at 206.  Hence, Altareb's contention that the district court failed to make the necessary findings at step three of *Batson* is without merit.

Second, giving the district court great deference, we find that the district court did not commit clear error in denying the *Batson* challenge.  The Government also struck Juror 19 because (1) she might be sympathetic to Altareb, a former taxi driver, because her husband was a taxi driver, and (2) she was unemployed and her employment history was unclear.  Although these excuses are thin, we are obligated to

afford wide discretion to the presiding judge. This Court has previously allowed strikes on the ground that a potential juror may be sympathetic to a defendant. *See, e.g.*, *Messiah*, 435 F.3d at 200 (finding juror's potential sympathy for defendant to be a sufficient basis). Moreover, the Government struck two of the other jurors who were unemployed, Jurors 11 and 23. These strikes undercut Altareb's argument that the stated reasons were pretextual. Accordingly, while we might have reached a different conclusion if we were deciding this question *de novo* or if the only reason given by the Government was that Al Jazeera was the source of the juror's news, we affirm the court's rejection of Altareb's *Batson* challenge.

## 2. Sufficiency of the Evidence for Count One

Altareb argues there was insufficient evidence that he violated 18 U.S.C. § 1960. "We review challenges to the sufficiency of evidence *de novo*." *United States v. Pierce*, 785 F.3d 832, 837 (2d Cir. 2015). The defendant "bears a heavy burden because a reviewing court must consider the evidence in the light most favorable to the prosecution and uphold the conviction if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Mazza-Alaluf*, 621 F.3d 205, 209 (2d Cir. 2010) (internal quotation marks omitted).

An individual violates § 1960 if he "knowingly conducts, controls, manages, supervises, directs, or owns all or part of an unlicensed money transmitting business." 18 U.S.C. § 1960(a). Section 1960 requires the operation to be a business such

that a person "cannot be prosecuted for a single, isolated transmission of money."

*United States v. Velastegui*, 199 F.3d 590, 595 n.4 (2d Cir. 1999).

The Government put forth sufficient evidence that Altareb operated a money transmitting business.[1]  For example, trial testimony showed that Altareb transferred money to Yemen four times for Saleh and twice for Kassim.  Moreover, in March 2015, Altareb was arrested in possession of $776,814 at an airport while trying to fly to Yemen, and he used a fee schedule to encourage larger transfers.  Altareb even acknowledges that, "[a]t most, the evidence showed a *few* disparate, isolated instances." Appellant's Br. at 29 (emphasis added).  Viewing the evidence in the light most favorable to the Government, a rational trier of fact could have found sufficient evidence to support Altareb's conviction on Count One.

## 3.     Venue for Count One

Altareb argues that the district court lacked venue for Count One because the crime did not take place in the Eastern District of New York.  "A defendant in a criminal case has the right to be tried in the district where the crime was 'committed.'" *United States v. Lange*, 834 F.3d 58, 68 (2d Cir. 2016) (quoting U.S. Const. amend VI). Venue may lie in more than one location and is "proper in any district in which an offense was begun, continued or completed."  *Id.* at 69 (internal quotation marks omitted).  The Government must establish venue by a preponderance of the evidence,

---

[1]     The parties stipulated that Altareb did not have a license to transmit money.

and we review the evidence in the light most favorable to the Government. *United States v. Tzolov*, 642 F.3d 314, 318 (2d Cir. 2011).

Where a defendant fails to object with "sufficient clarity to apprise the district court of his position," we review the district court's judgment for plain error. *United States v. Joseph*, 542 F.3d 13, 25 (2d Cir. 2008), *abrogated on other grounds by United States v. Ferguson*, 676 F.3d 260, 276 n.14 (2d Cir. 2011). To establish plain error, the defendant must show "(1) [an] error (2) that is plain and (3) affects substantial rights." *United States v. Villafuerte*, 502 F.3d 204, 209 (2d Cir. 2007). If these requirements are met, we may correct the error only if it "seriously affected the fairness, integrity, or public reputation of the judicial proceedings" and constitutes a "miscarriage of justice." *Id.* (internal quotation marks omitted).

Here, Altareb failed to preserve his venue objection because he did not raise it below. *Joseph*, 542 F.3d at 25; *see United States v. Vasquez*, 267 F.3d 79, 87 (2d Cir. 2001) (holding defendant failed to preserve objection where defendant objected to charges below but urged different grounds on appeal). After the Government's case, Altareb argued that the Government "failed to prove each and every element as a matter of law beyond a reasonable doubt as to all five counts." J. App. at 770. Altareb did not, however, articulate a venue objection or a basis for a venue objection. Therefore, we review the district court's decision for plain error.

The district court did not, in any event, commit error, much less plain error, for venue in the Eastern District of New York was proper. Altareb was arrested in JFK Airport, while attempting to transport $776,814 to Yemen. Evidence at trial established that Hawalas, like the one Altareb operated, required a settling of accounts through bulk cash smuggling around once or twice a year. Altareb, therefore, was arrested in the Eastern District of New York while continuing his money transmitting business by traveling to Yemen to settle his accounts. The venue challenge fails.

### 4. Constitutionality of Forfeiture

Altareb argues that the forfeiture of $776,814 was excessive under the Eighth Amendment. Where a defendant fails to bring a constitutional challenge to forfeiture below, as is the case here, we review the district court's decision for plain error. *United States v. Elfgeeh*, 515 F.3d 100, 138 (2d Cir. 2008).

In *United States v. Bajakajian*, the Supreme Court established a two-step inquiry to determine whether a forfeiture was excessive under the Eighth Amendment. 524 U.S. 321 (1998); *accord United States v. Viloski*, 814 F.3d 104, 108 (2d Cir. 2016). At step one, we must determine whether the Excessive Fines Clause applies to the forfeiture at issue. *Viloski*, 814 F.3d at 109. The Excessive Fines Clause applies only where the forfeiture may be characterized, at least in part, as punitive. *Id*. At step two, we determine whether the challenged forfeiture is unconstitutionally excessive. *Id*. A forfeiture is unconstitutionally excessive "if it is grossly disproportional to the gravity of

- 10 -

a defendant's offense."  *Bajakajian*, 524 U.S. at 334.  There is no test for gross disproportionality, but "we have interpreted [*Bajakajian*] as requiring us to consider the following four factors":

> (1) the essence of the crime of the defendant and its relation to other criminal activity, (2) whether the defendant fits into the class of persons for whom the statute was principally designed, (3) the maximum sentence and fine that could have been imposed, and (4) the nature of the harm caused by the defendant's conduct.

*Viloski*, 814 F.3d at 110 (internal quotation marks omitted).

Altareb did not preserve this objection because he did not raise it at sentencing.  Moreover, Altareb has not shown that, even assuming there was plain error, the error "seriously affected the fairness, integrity, or public reputation of the judicial proceedings" and that it resulted in a "miscarriage of justice."  *Villafuerte*, 502 F.3d at 209.  Indeed, he was arrested with $776,814 in his possession as he was trying to smuggle the funds out of the country, in connection with his unlicensed money transmitting business.  Section 982(a)(1), the forfeiture provision applicable to the crime of operating an unlicensed money transmitting business, authorizes forfeiture of property "involved in" the offense or "traceable to such property."  18 U.S.C. § 982(a)(1); *see also* 31 U.S.C. § 5332(b)(2) (providing court "shall order" forfeiture of property "involved" in bulk cash smuggling and property traceable thereto).  The money here was being used to operate an unlicensed money transmitting business and in a bulk cash smuggling operation.

- 11 -

Accordingly, there was no plain error in the district court's forfeiture order.

* * *

We have considered Altareb's remaining arguments and find them to be without merit.  Accordingly, we **AFFIRM**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

- 12 -